[Cite as *State v. Davis*, 2014-Ohio-90.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                           :

      Plaintiff-Appellee,          :

                                       No. 13AP-98

v.                                       :          (C.P.C. No. 06CR-08-6596)

Allen S. Davis,                          :          (REGULAR CALENDAR)

      Defendant-Appellant.         :

---

D E C I S I O N

Rendered on January 14, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

*Timothy Young*, Ohio Public Defender, and *Kenneth R. Spiert*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1}  Defendant-appellant, Allen S. Davis ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas denying his petition for post-conviction relief brought pursuant to R.C. 2953.21.

**I. FACTS**

{¶ 2}  On August 22, 2006, five teenage girls decided to go ghost hunting. The girls had heard that a residence located at 141 Sharon Springs Drive in Worthington, Ohio, was a haunted house. Tessa Acker drove her friends to the address and stopped the vehicle on the street in front of the residence. It was around 10:00 p.m. and it was dark.

{¶ 3}   Rachel Barezinsky and two of the other girls exited the vehicle and walked toward the home.  One of the girls noticed an open first-floor window.  As they approached the home a car horn sounded, and one of the girls believed she heard a bat.  The girls became frightened and ran back to the car.  As they drove away from the home, they heard several popping sounds.

{¶ 4}   Believing they had heard firecrackers, the girls circled the block and returned to the residence.  Some of the girls yelled out in the direction of the home, and then several more pops were heard.  The girls again became frightened and drove away.  They had traveled only a short distance away from the residence when Rachel slumped over onto the driver.  It was at that point that the girls stopped the vehicle and discovered that Rachel had been shot.

{¶ 5}   Police recovered a .22 caliber rifle from appellant's home.  Appellant admitted that he had fired a number of "warning shots" at a vehicle.  According to appellant, two men had harassed him the previous week by pounding their fists on his bedroom window as he slept, and he believed that the same men had returned on the evening in question.  Appellant stated that he fired the shots to scare the men away and to protect his family.  Appellant did not believe he had done anything wrong.

## II. CRIMINAL PROCEEDINGS

{¶ 6}   On August 31, 2006, a Franklin County Grand Jury indicted appellant on five counts of felonious assault, each with a firearm specification.  Appellant initially entered a not guilty plea to the charges.

{¶ 7}   The trial court ordered appellant to undergo both a competency and sanity evaluation.  On March 15, 2007, clinical forensic psychologist, Jaime Lai, Psy.D., submitted a written opinion on the issue of competency. which reads as follows: "[Appellant] is not mentally retarded, but he is mentally ill.  It is further my opinion within a reasonable degree of psychological certainty that *in spite of his mental illness,* the [appellant] is presently capable of understanding the nature and objectives of the proceedings against him and assisting in his defense." (Emphasis added.)  (R. 75.)  As a result of Dr. Lai's report, the trial court made its initial determination that appellant was competent to stand trial.  (R. 105.)

{¶ 8}  In a second report issued On May 31, 2007, Dr. Lai opines on the issue of appellant's sanity as follows:

> Pursuant to Section 2945.371 (G) (4) of the Ohio Revised Code, it is my opinion, with a  reasonable degree of psychological certainty that at the time of the offense charged, the defendant did not have a severe mental defect, but did have a severe mental disease. It is also my opinion, with a reasonable degree of psychological certainty that at the time of the offense, this severe mental disease caused him not to know the wrongfulness of the acts charged.

(R. 110.)

{¶ 9}  Shortly before trial began, appellant's competency was again questioned. Dr. Kristin Haskins subsequently evaluated appellant in July 2007 to determine his competency to stand trial.  Dr. Haskins agreed with Dr. Lai on the issue of appellant's competency, but she did not agree that appellant suffers from a mental illness.  Dr. Haskins' report is not part of the record, but the parties stipulated to her findings, and the trial court relied upon her opinion in ruling that appellant was competent to stand trial.

{¶ 10} After the jury was selected and opening statements had been made, appellant withdrew his not guilty plea and entered a plea of guilty to two counts of felonious assault, each with a firearm specification.  By judgment entry dated July 9, 2007, the trial court accepted appellant's guilty plea, found him guilty, and sentenced him to prison for a total of 19 years.

### III. POST-CONVICTION PROCEEDINGS

{¶ 11} Appellant did not file a timely notice of appeal from his conviction. However, on February 4, 2008, appellant filed a petition for post-conviction relief in the Franklin County Court of Common Pleas.  Thereafter, on February 28, 2008, appellant filed a motion for delayed appeal in this court.  We subsequently denied appellant's motion for delayed appeal in *State v. Davis*, 10th Dist. No. 08AP-168 (Apr. 10, 2008) (memorandum decision).

{¶ 12}  The trial court denied appellant's claims for post-conviction relief without a hearing.  We dismissed appellant's appeal from the trial court's decision due to the lack of a final appealable order.  *State v. Davis*, 10th Dist. No. 08AP-679, 2009-Ohio-1666, ¶ 19.

On January 7, 2013, the trial court issued a second decision denying appellant's petition. Appellant timely appealed to this court from the judgment of the trial court.

## IV. ASSIGNMENT OF ERROR

{¶ 13} In the instant appeal, appellant assigns the following as error:

[I.] Mr. Davis's guilty plea was not the result of a knowing and intelligent waiver of his constitution rights, as it was not the product of a free and rational choice among the available alternatives. Therefore, his conviction and sentence violates Mr. Davis's rights to due process and to be free from self-incrimination under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

[II.] Mr. Davis was deprived of his rights to the effective assistance of counsel and to due process when, at the outset of the case, counsel unreasonably acquiesced in his client's wishes and abandoned a potentially meritorious not-guilty-by-reason-of-insanity defense that was supported by the extensive report of the court's expert and by the facts of the record, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

[III.] The trial court's denial of Mr. Davis's amended postconviction petition, without granting leave to conduct discovery or an evidentiary hearing, was arbitrary and unreasonable because Mr. Davis demonstrated substantive grounds for relief, i.e., that he was deprived of his constitutional rights to due process and to the effective assistance of counsel, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United Stated Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

## V. STANDARD OF REVIEW

{¶ 14} The appropriate standard for reviewing a trial court's decision to dismiss a petition for post-conviction relief, without an evidentiary hearing, involves a mixed question of law and fact. *State v. Tucker,* 10th Dist. No. 12AP-158, 2012-Ohio-3477, ¶ 9. This court must apply a manifest-weight standard in reviewing a trial court's findings on factual issues underlying the substantive grounds for relief, but we must review a trial court's legal conclusions de novo. *Id.*

{¶ 15} A trial court's decision to deny a post-conviction petition without a hearing is reviewed under the abuse-of-discretion standard. *State v. Boddie*, 10th Dist. No. 12AP-811, 2013-Ohio-3925, ¶ 11, citing *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 14. An abuse of discretion entails a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## VI. LEGAL ANALYSIS

### A. Post-Conviction Relief

{¶ 16} The right to seek post-conviction relief is governed by R.C. 2953.21(A)(1)(a), which provides, in relevant part:

> Any person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

{¶ 17} The post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Calhoun,* 86 Ohio St.3d 279, 281 (1999). "[I]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson,* 64 Ohio St.2d 107 (1980).

{¶ 18} Post-conviction relief is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. *State v. Carter,* 10th Dist. No. 13AP-4, 2013-Ohio-4058, ¶ 15, citing *State v. Murphy,* 10th Dist. No. 00AP-233 (Dec. 26, 2000). The petitioner, however, is not automatically entitled to an evidentiary hearing on the petition for post-conviction relief. *Id.* Indeed, R.C. 2953.21(C) states, in relevant part:

Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *

## B. Ineffective Assistance of Counsel

{¶ 19} In appellant's amended petition for post-conviction relief, he asserts that his guilty plea was not knowing, voluntary, and intelligent because trial counsel incorrectly advised him of what would occur if he was found not guilty by reason of insanity ("NGRI"). In his first assignment of error, appellant claims that the trial court abused its discretion by denying post-conviction relief without a hearing, inasmuch as he presented evidence that trial counsel failed to properly advise him of the consequences of a meritorious NGRI defense.

{¶ 20} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Therefore, the burden of showing ineffective assistance of counsel is on the party asserting it. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Additionally, in fairly assessing counsel's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶ 21} In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 686, 681 (1984). First, he must demonstrate that his trial counsel's performance was deficient. This requires a showing that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 686. If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id.* In the context of a guilty plea, the appellant

must show that, but for counsel's deficient performance, appellant would not have pleaded guilty. *State v. Nero,* 56 Ohio St.3d 106 (1990).

### C. Res Judicata

{¶ 22} A guilty plea does not waive the right to claim on appeal that constitutionally ineffective assistance of counsel rendered the plea less than knowing and voluntary. *State v. Woodhouse,* 6th Dist. No. S-04-004, 2004-Ohio-6160, ¶ 17. Consequently, " 'the doctrine of res judicata precludes a defendant from raising, in a petition for postconviction relief, an ineffective assistance of counsel claim that was or could have been raised at trial or on direct appeal.' " *State v. Vinson*, 11th Dist. No. 2007-L-088, 2008-Ohio-3059, ¶ 32, quoting *State v. Delmonico*, 11th Dist. No. 2004-A-0033, 2005-Ohio-2882, ¶ 14. In order to avoid the defense of res judicata, support for the claims in the petition for post-conviction relief must be competent, relevant, and material evidence, outside the trial court's record, and it must not be evidence that existed or was available for use at the time of trial. *See State v. Braden*, 10th Dist. No. 02AP-954, 2003-Ohio-2949, ¶ 27; *State v. Adams*, 11th Dist. No. 2003-T-0064, 2005-Ohio-348, ¶ 39. Where new counsel represents defendant on direct appeal and the ineffectiveness of trial counsel could have been determined without resort to evidence outside the record, a petition for post-conviction relief alleging ineffective assistance of trial counsel is barred by res judicata. *State v. Cole,* 2 Ohio St.3d 112, 113-14 (1982).

{¶ 23} Inasmuch as appellant failed to timely appeal from his conviction, res judicata bars appellant from raising any claim of deficient performance on the part of trial counsel that could have been raised in a direct appeal to this court. *Id.* Similarly, to the extent that appellant contends that the trial transcript contains evidence of deficient performance on the part of trial counsel, appellant may not rely upon such evidence in support of his petition. *Id.* The only support presented by appellant outside the record of the criminal proceedings consists of a February 8, 2008 affidavit of Attorney Kort Gatterdam, and appellant's affidavits of February 1 and 14, and April 10, 2008. In his February 14, 2008 affidavit, appellant acknowledges that his trial counsel discussed with him the report issued by Dr. Lai on May 31, 2007, wherein Dr. Lai opined that he was not legally sane at the time of the offenses. He also acknowledges that he instructed his

counsel not to pursue an NGRI defense. However, in his affidavit of April 10, 2008, appellant avers:

> 2. Before my trial started, my trial attorney, Mr. Rigg, advised me that if I successfully pursued the not-guilty-by-reason-of-insanity (NGRI) defense, I would automatically be committed to a mental institution and would remain there for many years.
>
> 3. Mr. Rigg informed me that the psychologist who performed the second competency evaluation, Dr. Haskins, concluded that I was competent to stand trial.
>
> 4. Mr. Rigg did not explain to me that Dr. Haskins found me to be not mentally ill.
>
> 5. Mr. Rigg did not explain to me the significance of Dr. Haskins's finding that I am not mentally ill on whether I would have been hospitalized had I successfully pursued the NGIR defense. He did not advise me that a hearing would have been conducted to decide whether I was a mentally ill person subject to hospitalization by court order, or that Dr. Haskins's finding that I was not mentally ill would have been significant evidence in that hearing. He also did not advise me of the significance of the State's stipulation to Dr. Haskins's findings.
>
> 6. I abandoned the NGIR defense because I believed, based on Mr. Rigg's advice, that succeeding with the defense would have inevitably resulted in a lengthy period of hospitalization in a state mental institution. Had I known that this advice was inaccurate and that Dr. Haskins's finding that I was not mentally ill (together with the State's stipulation to that finding) substantially reduced the likelihood of hospitalization, I would not have abandoned the NGRI defense or pleaded guilty.

(R. 216, exhibit A.)

### D. Merit of Appellant's Claim

{¶ 24} A person is "not guilty by reason of insanity," pursuant to R.C. 2901.01(A)(14), if the person proves that, at the time of the commission of the offense, he did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts. *State v. Monford,* 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 69 (10th Dist.). "NGRI is an

affirmative defense that must be proved by the defendant by a preponderance of the evidence." *Id.* at ¶ 70, citing *State v. Jennings*, 10th Dist. No. 05AP-1051, 2006-Ohio-3704, ¶ 10; *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 64; R.C. 2901.05(A). "[T]he standard for competency is different, in that it relates to the defendant's present mental condition and his ability to understand the nature of the proceedings against him and to assist his counsel in his defense." *Monford* at ¶ 79; R.C. 2945.37.

{¶ 25} In denying appellant's amended petition, the trial court gave little weight to the "self-serving statements" in appellant's affidavit of April 10, 2008. (Jan. 7, 2013 Trial Court Decision, 11.) We agree with the trial court's assessment.

{¶ 26} In post-conviction relief proceedings, the trial court may, under appropriate circumstances, deem affidavit testimony to lack credibility without first observing or examining the affiant. *Calhoun* at 284. Indeed, this court has previously held that a petitioner's own self-serving affidavit is legally insufficient to rebut the record in the underlying criminal proceedings. *State v. Banks,* 10th Dist. No. 10AP-1065, 2011-Ohio-2749, citing *State v. Kapper*, 5 Ohio St.3d 36, 38 (1983); *State v. Mayrides,* 10th Dist. No. 03AP-347, 2004-Ohio-1623. Unless the petition is also supported by operative facts other than those contained in the petitioner's affidavit, the petition may be denied without a hearing. *Id.*

{¶ 27} In his affidavit, appellant attempts to retract his in-court acknowledgment that his counsel explained to him the possible consequences of a jury verdict of NGRI as well as the possible consequences of a guilty plea. The only other evidence submitted by appellant in support of his petition is the affidavit of Attorney Kort Gatterdam. Gatterdam is licensed to practice law in Ohio, and is employed by the Ohio State Public Defenders Office as Chief Trial Counsel. In his affidavit, he avers, in part:

> 3. It is a matter of public record that Allen S. Davis was charged in this case with five counts of felonious assault, with firearm specifications, and was facing a potential maximum prison term of 43 years. It is also a matter of public record that the court ordered a psychological evaluation to determine Mr. Davis's mental status at the time of the shooting, and that the psychologist reported that:
>
> [I]t it my opinion, with a reasonable degree of psychological certainty that at the time of the offense charged, the defendant

did not have a severe mental defect, but did have a severe mental disease. It is also my opinion, with a reasonable degree of psychological certainty that at the time of the offense, this severe mental disease caused him not to know the wrongfulness of the acts charged.

4. Based upon my experience and upon the prevailing constitutional standards, it is my professional opinion that Mr. Davis's trial counsel's performance in counseling Mr. Davis to plead guilty to two counts of felonious assault (with firearm specifications) was deficient, because Mr. Davis had available to him a viable not-guilty-by-reason-of-insanity (NGRI) defense, which would have been a complete defense to any criminal liability for his actions.

(Gatterdam Affidavit, ¶ 3-4.)

{¶ 28} Gatterdam's affidavit expresses his legal opinion regarding the merit of appellant's NGRI defense. There is no indication in Gatterdam's affidavit that he has any personal knowledge of the advice given to appellant regarding the consequences of a successful NGRI defense. Gatterdam does not claim to have spoken either with appellant or appellant's trial counsel regarding the specific advice given to appellant. Gatterdam's legal opinion is based upon his understanding of Ohio law as applied to the facts found in the "public record," including the reports submitted by the two medical professionals who evaluated appellant prior to trial. In short, Gatterdam's affidavit does not contain any operative facts that are not part of the record of appellant's criminal trial.

{¶ 29} Appellant also claims in his affidavit that, had trial counsel properly advised him, he would have been willing to surrender his documented opposition to the NGRI defense. However, as the trial court noted in its decision denying appellant's amended petition, the record of the criminal proceedings belies appellant's claim. For example, in a correspondence filed December 28, 2006, appellant complained that "it appears to me that I'm to be painted as some sort of mental case. As a defense strategy—that's an anathema to me!" (R. 47.). In a letter dated December 9, 2006, appellant reiterated his displeasure with court-appointed counsel "paint[ing] [him] as a mental case." (R. 57.) Finally, in a letter to the trial judge dated January 18, 2007, appellant states:

> Contrary to what you may have been told by my assigned counsel, * * * I am NOT pursuing nor have I authorized an insanity defense. * * *
>
> An insanity defense in my case is patently offensive to me, groundless, and without merit for the following reasons:
>
> ● I have no history of mental illness.
> ● Since being incarcerated, I have been a model inmate.
> ● Shortly after my incarceration, Dr. Ott, MD, a psychiatrist in the employ of Franklin County, examined me and concluded I needed no medications of any kind whatsoever nor was I suffering from any mental illness.

(R. 61.)

{¶ 30} Based upon the evidence in the record of appellant's criminal case, it is extremely unlikely that appellant would have permitted a jury to determine whether he was mentally ill. Moreover, we note that appellant was facing a possible sentence in excess of 43 years in prison if convicted of all five counts of felonious assault and the specifications. Appellant admittedly fired numerous rifle shots at a vehicle containing five teenage girls, and two of those shots struck Rachel. Given this evidence, there was considerable risk to appellant if he chose to enter a plea of not guilty and proceed to trial. Moreover, Dr. Lai and Dr. Haskins disagreed whether appellant suffered from a mental illness. The trial court admitted both opinions pursuant to the parties' stipulation. Thus, even if the jury returned a verdict of NGRI, there was considerable risk that appellant would be found by the trial court to be "a mentally ill person subject to hospitalization."[1]

{¶ 31} In the final analysis, even if we were to credit appellant's self-serving and uncorroborated averments regarding trial counsel's performance, the evidence in the criminal case contradicts the claim in appellant's averment that he "would not have abandoned the NGRI defense and pleaded guilty" had he been properly advised. Thus, appellant has failed to produce credible evidence on the critical issue of prejudice. Accordingly, appellant's first assignment of error is overruled.

---

[1] R.C. 2945.40 sets out the procedure to be followed by the trial court upon a verdict of NGRI: (A) If a person is found not guilty by reason of insanity, * * * the trial court shall conduct a full hearing [within ten days] to determine whether the person is a mentally ill person subject to hospitalization by court order. * * * (F) If, * * * the court finds by clear and convincing evidence that the person is a mentally ill person subject to hospitalization by court order, the court shall commit the person * * * to the department of mental health.

**E. Duty of Counsel**

{¶ 32} In his second assignment of error, appellant claims that trial counsel was ineffective because he acceded to appellant's directive to forego an NGRI defense. According to appellant, Gatterdam's affidavit provides the necessary support for his claim. We disagree.

{¶ 33} Gatterdam's opinion presumes that trial counsel has both the right and the duty to enter a plea of NGRI over the client's objection. In *State v. Edwards*, 119 Ohio App.3d 106, 109-10 (10th Dist.1997), we made the following relevant observations:

> There is general agreement in the case law and the rules of professional responsibility that the authority to make decisions regarding the conduct of the defense in a criminal case is split between criminal defendants and their attorneys. * * * ABA Model Rule of Professional Conduct 1.2(a), * * * reserves decisions on fundamental matters to the client. * * * In a criminal case, the lawyer shall abide by the client's decision, * * * as to a plea to be entered, whether to waive jury trial and whether the client will testify.

(Citations omitted.)[2]

{¶ 34} In this case, the two medical professionals who evaluated appellant came to the conclusion that he was competent to stand trial, and the trial court's competency ruling remains undisturbed. Although appellant now regrets his decision to plead guilty to the charged offenses, trial counsel's professional obligation was to abide by appellant's wishes. *See State v. Tenace*, 121 Ohio App.3d 702 (6th Dist.1997)[3] (Trial court erred in permitting defense counsel, over defendant's objection, to withdraw defendant's plea of NGRI and proceed on a plea of not guilty.). Accordingly, appellant's second assignment of error is overruled.

{¶ 35} In appellant's third assignment of error, appellant argues that the trial court erred by not providing him with an opportunity to conduct discovery in connection with his amended petition for post-conviction relief. This court disagrees.

{¶ 36} " 'A postconviction relief proceeding is a collateral civil attack on a judgment and is not imbued with the same federal constitutional protections as are all of

---

[2] The language of the ABA Model Rule is identical to Ohio Rules of Professional Conduct 1.2(a).

[3] Discretionary appeal not allowed in *State v. Tenace*, 80 Ohio St.3d 1465 (1997).

the criminal proceedings which precede it.' " *State v. Conway*, 10th Dist No. 12AP-412, 2013-Ohio-3741, ¶ 67, quoting *State v. Lott*, 8th Dist. No. 79790, 2002-Ohio-2752. The rule in Ohio is that a convicted criminal defendant has no right to additional or new discovery during post-conviction relief proceedings. *State v. Bethel*, 10th Dist. No. 07AP-810, 2008-Ohio-2697, citing *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 159 (1999). The civil rules governing discovery likewise do not apply in a post-conviction relief proceeding. *Id.* at ¶ 22.

{¶ 37} Appellant argues that the trial court abused its discretion by refusing to compel the deposition testimony of appellant's trial counsel. However, as noted above, appellant presented insufficient evidence in support of his claim to warrant a hearing on the matter. Under such circumstances, a trial court does not abuse its discretion in denying the petition without first providing an opportunity to conduct discovery. *Conway* at ¶ 68. Accordingly, appellant's third assignment of error is overruled.

## VII. CONCLUSION

{¶ 38} For the foregoing reasons, we conclude that appellant failed to produce sufficient evidence, outside the record of the criminal proceedings, to support a finding that his guilty plea was the product of constitutionally ineffective assistance of trial counsel. Thus, we hold that the trial court did not abuse its discretion in denying his petition for post-conviction relief without a hearing.

{¶ 39} Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

_____